SAUNDERS, Judge.
This consolidated appeal arises from an agreement between a waterworks district and a municipality. Waterworks District Number Four argues that Louisiana law prohibits the City of Lafayette from raising the District’s water rates without prior approval of the District’s governing authority and requests an injunction prohibiting the City from future unilateral increases. Alternatively, the District | amaintains that the Agreement requires the City to place all revenues from District customers into a special account. We affirm. Louisiana law does not forbid the Agreement between these parties, and the City has kept its end of the bargain.

FACTS

In 1966, the City of Lafayette and Waterworks District Number Four entered into a thirty year agreement whereby the District would construct a waterworks system and the City would sell and distribute water to customers residing in the contract area. The District issued revenue bonds to finance the cost of construction of the system. The rights of the District’s creditors were protected by delegating to the City virtually all management of the District’s system in the affected area. The agreement further recognized that the City’s outstanding utility revenue bonds were secured by pledge and dedication of the incoming revenues from the system. To prevent either party from undercutting the rates charged by the other during the term of this relationship, the agreement further provided that the rates charged by the District and the City would be identical, assuring that neither party’s consumers would be penalized by the arrangement.
This suit arose when in 1981, the City increased water rates without the approval of the District.
The rates were increased by the City on the advice of an engineering firm retained, among other reasons, to advise the City as to the level of rates necessary to cover operating and maintenance expenses of the system, and to timely pay principal and interest on the bonds.
Noting this support for a rate increase and the absence of contradictory evidence, the trial court concluded that the City was justified in raising its rates to | .-¡continue to service its debt and operate its system, in compliance with its bond resolutions and La.R.S. 39:1019.

FIRST ASSIGNED ERROR

In its first assigned error, the District argues that the trial court’s ruling permitted water rates in the Water District to be increased by the City without the prior approval of the governing authority of the District. In addition to seeking redress for the City’s alleged past transgressions, the District asks that we enjoin the City from hereafter increasing and collecting water rates exceeding those approved by the District’s governing body.
The District relies on La.R.S. 39:1019 and La.R.S. 33:3818 to suggest that the City lacked the authority to increase the rates of its consumers. From its perspective, only *1127 the District’s governing body possesses the legal authority to change such rates.
Sec. 1019. Fees and charges
When any such political subdivision has issued bonds or other debt obligations and pledged the revenues of any work of public improvement in whole or in part for payment thereof, it shall impose and collect fees and charges for the products, commodities, and services furnished by such work of public improvement, including those furnished to the subdivision itself and its various agencies and departments, in such amounts and at rates as shall be sufficient at all times to pay the expenses of operating and maintaining the work of public improvement; provide a sinking fund sufficient to assure the prompt payment of principal and interest on the bonds or other debt obligation as each falls due; provide such a reasonable fund for contingencies as may be required by the resolution authorizing the bonds or other debt obligation and provide an adequate depreciation fund for those repairs, extensions, and improvements to the work of public improvement as may be necessary to assure adequate and efficient service to the public. No board or commission other than the governing body of the political subdivision shall have authority to fix or supervise making of such fees and charges. (Emphasis ours.)
Sec. 3818. Powers of board of commissioners
A. The board of commissioners of the waterworks district shall have absolute control and authority over the waterworks in the district and shall adopt by-laws, rules and regulations for the proper conduct and | ^operation of a waterworks system in their district. The board may employ the necessary labor for directing and installing a waterworks system in their district and may employ the services of an attorney when necessary and fix his fees or his salary.
* * * * ⅜ *
C. Out of the funds deposited with the board by purchasers of water service as security to protect the board from loss by reason of extending water service to such purchasers, the board may make purchases of additional new water meters or water meters to replace those already in use; provided, however, that at least ten per cent of the total amount of such funds on deposit with the board at any one time shall be maintained in a cash reserve which shall not be used or encumbered for the purchase of water meters. (Emphasis ours.)
In citing these provisions, the District overlooks the following language contained in La.R.S. 33:3815 and 39:1018, which we find controlling:
Sec. 3815. Powers of waterworks districts
A. Any waterworks district thus created and named or numbered by a police jury shall constitute a body corporate in law, with all the powers of a corporation, and all powers necessary for it to carry out the objects for which it was created. The waterworks district may expropriate property for any purpose that it may find necessary in the operation of its waterworks system, and may acquire by donation or purchase any existing waterworks system in the district. Waterworks districts may dig and excavate the roads, streets, sidewalks, and alleys in the district for the purpose of laying pipeline or water mains. It may acquire any and all machinery necessary for the purpose of affecting the object for which it is formed and shall own all sites which are acquired either by donation, purchase, expropriation, exchange, or otherwise in full ownership.
B. Waterworks districts may cooperate with other waterworks districts within their respective parishes, or with private individuals, associations, corporations, or municipalities. (Emphasis ours.)
Sec. 1018. Covenants; future holders
The resolution authorizing the issuance of the bonds or other debt obligation may contain such covenants with the future holder of the bonds or other debt obligation as to the management and operation of the work of public improvement, the imposition and collection of fees and charges for *1128 the products, commodities, or services furnished thereby, the disposition of fees and revenues, the issuance of future bonds and other debt obligations, and the creation of future liens and \ ^encumbrances against the work of public improvement and the revenues thereof, the carrying of insurance on the properties constituting such work of public improvement, the disposition of the proceeds of the insurance, and other pertinent matters, as may be deemed necessary by the governing body to assure the marketability of the bonds or other debt obligations, provided these covenants are not inconsistent with the provisions of this Part. (Emphasis ours.)
In enacting La.R.S. 33:3815, the Legislature plainly intended to permit water districts to work with other political subdivisions toward the common goal of bettering the lives of the many; and by the express language of La.R.S. 39:1018, capital formation must be included among the causes for collaboration sanctified by the Legislature.
We find nothing illicit about the intergovernmental agreement signed between the City and the District. To the contrary, it would appear that both the agreement and the resolutions of each entity were offered to protect the rights of bondholders and the City, both of whom apparently were vital to the District’s viability. In accord, La.R.S. 39:1019 (requiring fees and charges sufficient to cover operating and debt expenses); Waterworks District No. 3 v. City of Alexandria, 236 La. 804, 109 So.2d 426 (1959).
One of the protections sought by the District’s secured creditors was the assurance that the City of Lafayette and not the District would operate, maintain, administer, extend, and improve the District’s revenue producing physical plant.
Because the evidence before us does not contradict the trial court’s conclusion that the City has honored and continues to honor its end of the bargain, we find no merit in the District’s first assigned error.

WATERWORKS FUND ACCOUNT

Second, the District reminds this court that its bond resolution requires the City to provide an accounting to the District for the revenues and expenditures concem-ing Igthe District geographical territory. Since we have concluded that the intergovernmental agreement, which provides that in cases of conflict between its terms and the terms of resolutions passed by the District and the City, the latter resolutions shall prevail,[2] is valid and enforceable, the District argues that it follows that the absence of a similar bookkeeping provision in the agreement provokes a conflict, mandating enforcement of its bond resolution’s accounting provisions.
For its part, the City contends that because it was not a party to the District’s bond resolution, it should not be required to comply with its terms.
After examining the contracts, resolutions and other evidence, the trial court concluded that the City was not required to deposit payments under the operating agreement into any particular account on behalf of the District:
As stated above, ... the operating agreement recognizes that the parties have each issued bonds and that in the event of conflict between the operating agreement and bond resolution, the bond resolution will control. The District argues that a conflict exists, because its bond resolution refers to particular accounts. Neither the contract or the bond resolution required the City to *1129 deposit funds into any particular account. However, the District’s bond resolution imposes an obligation on the District to make deposits in certain bank accounts. Therefore, this court does not find the conflict between the provisions of the operating agreement and the bond resolution passed by the District.
We affirm the conclusion reached by the trial court. In addition to the reasons assigned by it, we further observe that the intergovernmental arrangement explicitly ^provides that the City could retain all revenues, with the exception of specified payments “made by the City to the District at such intervals during each year as will enable the District to properly service its bonded indebtedness_” Nowhere does the District allege that the City has deprived it of the ability to service its debt in violation of the parties’ legally sanctified agreement. Accordingly, we find no merit in the District’s second assigned error.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed, with costs assessed to Waterworks District Number Four.
AFFIRMED.

. An extract from the intergovernmental agreement follows:
It is further recognized that the Bond Resolutions of both the City and the District contain various covenants and obligations securing the payment of the respective revenue bonds, including specifically an obligation that rates and charges for the services of the respective systems be levied and collected in amounts sufficient to pay principal and interest on the respective bonds issues and maintain required reserves in connection therewith. Accordingly, this Agreement shall not be interpreted as restricting the provisions of the Bond Resolutions, and in case of conflict it is recognized that the provisions of such Bond Resolutions shall be controlling as the intent of the parties hereto; it being the intention of the parties hereto that the parties comply with its bond covenants in carrying out the provisions of this Agreement.